Could you call the next case please? Case number 318-0443, the people of the state of Illinois, appellant by Jamie Bella v. Michael Gordon, athlete by Seth Annell. Thank you. Ms. Bella, good morning. May it please the court, your honors, counsel. My name is Jamie Bella and I am here with the State's Attorney Appellate Prosecutor's Office and I represent the people of the state of Illinois. Today's case comes on appeal from a trial court's decision that the arresting officer lacked probable cause in arresting the defendant for driving under the influence during the hearing to rescind the statutory summary suspension. The defendant filed a petition to rescind the summary suspension which was pending against him after he was arrested for driving under the influence on June 12, 2018. His petition indicated that he was seeking rescission on all four of the available grounds for rescission, but the court ruled on the lack of probable cause for arrest. The people submit that this finding was against the manifest weight of the evidence and we ask this court to reverse. Probable cause exists for the totality of the circumstances known to the officer at the time of arrest are sufficient to cause a reasonable man to determine that the defendant had committed or was committing a crime. Probable cause, therefore, it requires a look into what the officer knew at the time of the arrest. The arresting officer testified during the hearing that she was called to the scene of the accident of a motorcycle accident where a passenger had fallen off the back of a motorcycle. Upon arriving, she was informed by witnesses at the scene that the defendant's driving was at least partially responsible for the passenger's fall. Were they specific as to what that was? The driver? The driver of the motorcycle. Well, actually, it's an operator of the motorcycle. Operator. Drive cars, pilot boats, fly airplanes. I'm not a motorcycle person. Ride a motorcycle or operate them, yes. I'll take your word on operating a motorcycle. So during his operation of the motorcycle, he went over a median dividing two entrances to a gas station. And I guess the median had like a rumble strip. And when he went over, the passenger fell off the back. So the testimony isn't specific as to what the witnesses said, whether he was speeding, whether he turned too sharp. So it wasn't specific in that regard. But that he was lawfully operating his motorcycle at the time she fell off. Is there any suggestion otherwise? Other than the testimony of the officer that the witnesses suggested that his driving was at least partly responsible. And there's no other specifics. So if he was, if his driving was partially responsible, then I think there's some hint of unlawful. But when you operate a motorcycle, when you hit the throttle, there's a g-force back. And the passenger wasn't even holding on to the operator. Right. It does say in the transcript that he. And again, I didn't watch the video on this case. So I just received this case recently. So I'm fresh on those facts as far as what you can see without looking at the DVD of the actual interaction with the officer that went on at the scene. But based on the trial transcript, the defendant did testify that the passenger was not holding him around the waist. So the defendant smelled of alcohol, according to the officer's testimony. Slightly. Slightly. And he admitted that he had been drinking and that he had just left a bar. The defendant was tested using four different methods at the scene. The preliminary breath test, the horizontal gaze test, a one-legged stand, and a walk and turn. The defendant's breath registered a .109 on the preliminary breath test. The defendant displayed cues in excess of the minimum number to indicate impairment on both the walk and turn and the one-legged stand. And the defendant only passed one of the four tests administered, which was the horizontal gaze. Therefore, in some of the facts and circumstances known to the officer at the time of the arrest, that a man had been drinking at a bar and left the bar with a passenger on the back of his motorcycle. He hit a curb and the passenger fell off. And then he failed three out of the four tests. Did he hit a curb? Yes. It was a curb, not a median. Yeah, I guess it was a median. Uh-huh. It was between. It was a curb. Yeah. Yeah. A median. And you said a rumblestick. Was that a speed bump? No, it was part of the, I guess the median had grooves in it for, I guess, to indicate to a person driving over it that they were off the road. They call it a rumblestick. So a median is in the middle of the road. Right. This was off the road, but in the entrance to a gas station. So she describes it a little bit in her testimony as a raised divider between the two entrances. But it was not illegal to cross. There's no testimony. There's no testimony that it's illegal to cross. Correct. Correct. So the relevant question is then, considering these facts and circumstances, could a reasonable man determine that the defendant at the time was committing or had committed a crime of driving while under the influence or operating a motorcycle under the influence? The people submit that this evidence overwhelmingly supports the probable cause. So at the close of the hearing, the judge entered his findings of fact into the record, and those findings were that during the preliminary breath test that the reading was high, that the defendant passed the horizontal gaze test, that the defendant didn't fail to follow the instructions on the walk-and-turn test recurring times, and that the... Did not, right? Did not, right. Mm-hmm. Right. And then with respect to the one-legged stand test, that the defendant gave a very pronounced sway at the very beginning. So on the tests themselves, the judge found two of the four had failed or that he had passed. So he disagreed with the officer's conclusion about the walk-and-turn test. So the officer in that test, the heel-to-toe was not effective three of the times that she was observing. The judge noted that the officer, when she was giving the demonstration of how this test is to take place, that her toe did not touch her heel. And so on that, I think the instruction was, in his opinion, faulty. He was mirroring her instruction is what I think you can... I think that's what the... Because he doesn't state it specifically that way, but I think that that's the general conclusion that he's reaching in that. With respect to the preliminary breath test, there was a lot of testimony in the hearing regarding whether or not the machine itself was properly maintained and whether or not those results could be reliable. Prior to the hearing, the record shows that the defense counsel had... They were waiting to get the test logs for the preliminary breath test in order to shore up the difference between the horizontal gaze test and the breathalyzer results. And during the testimony of the officer, the log was entered into evidence regarding the testing, and the judge found at the end, in questioning the reliability of the preliminary breath test, that because it was in conflict with the horizontal gaze test, that he was basing his diminished reliance on that test based on the discrepancy. However, that is directly in conflict with this court's holding in... I'm sorry. In McCown, referring to the horizontal gaze test, where this court, or the Supreme Court, I'm sorry, determined that the horizontal gaze test could enjoy general admissibility in hearings and in trials. And there's specifically, in that opinion, a finding regarding what the reliability is of that test. And it says that the use of the HGM test results at trial should be limited to the conclusion that a failed test suggests that the subject may have consumed alcohol and may have been under the influence. There should be no attempt to correlate the test results with any particular blood alcohol level or range or level of intoxication. But that case is distinguishable because here he passed the test. He passed, correct. So the test results are not being offered as circumstantial evidence of impairment. The test results here were considered by the trial court to negate the accuracy of the PBT. Correct. However, in this case, the question is what trial court should use the information regarding the horizontal gaze test results to show. And when the defendant has failed that test. I think that is distinguishable, but I don't want to bicker with you. You can go ahead with your argument. Well, I think it's distinguishable as far as their defendant had failed the test and our defendant had passed the test. The part where I think that the two cases line up is that in this case, the defendant admitted to drinking. So there was already admitted evidence that he had been drinking. So the fact that he failed the horizontal gaze test may... The statement doesn't pop up automatically. Correct. You can drink one beer or one Bloody Mary and not show nystagmus. Nystagmus arises from high blood alcohol levels. But I really do want you to go on with your argument. But each of these tests do not necessarily negate the findings of other tests. The difficulty I'm having with your argument, just in fairness to you, is that often the state is here saying, well, he failed the nystagmus test, so he must have been intoxicated. Correct. You have to stick with the same argument. The argument logically is now he passed the nystagmus test, so he must have been sober. And I see some inconsistency in your argument, just so you understand where I'm coming from. Oh, no. I don't want to debate it. You're pleased to go forward with your argument. So the state's position is that cumulatively among all of the tests, there's a strong indication of impairment, regardless of whether or not one particular test showed a level of impairment not sufficient to trigger a positive test. Well, it's our standard of review here. We have a trial judge who says in that totality of evidence leading to either a conclusion of impairment or no impairment while operating a motor vehicle and he found no impairment. Correct. So what, as a reviewing court, are we to apply in terms of determining whether that was a reversible or a sustainable finding? The standard of review on probable cause cases, with respect to findings of fact, there's deference to the trial court as far as the findings of fact, and they shouldn't be overturned unless they're manifestly against the manifest weight of the evidence. On the ultimate ruling, the court, the reviewing court, will review de novo. So, yeah, next question, law and fact analysis. Is that what you're saying? Correct. And with respect to the findings of fact, they are not to be reversed unless they're against the manifest weight of the evidence. And so which facts should be reversed? Overall, there are seven pieces of information, seven facts that the officer used to reach the totality of the circumstances, determination that probable cause existed before she made the arrest. So the court entered findings of fact on four of those, and with the other three, because they don't have test results, and without finding a fact to reverse with the other two, the horizontal gaze test should not be used to throw out results from a preliminary breath test. Two minutes, please. I thought that part of the reason why the breath test was thrown out was because it hadn't been tested. The trial judge did not make any determination as to his findings as far as the reliability based on the testing. At trial, the document that was entered, the log that was entered into evidence, was not authenticated by the person in the department that does the testing or maintains the records for that testing. So the officer testified that she had no involvement at all. Her position in the department is not to do testing or to log the testing or to maintain the records for testing. So the document that was entered in evidence showed two testing dates. One was in January, and then one was the day after the defendant was arrested. But she had no information as far as. So you're saying was it, so was it even admissible? I believe so. The document at first was not admitted. The judge ruled that there was not a proper foundation and did not allow it. The defense continued to question on foundation, and ultimately the judge did allow it into evidence. But based on the testimony of the officer, the people submit that there was, you know, she had a limited basis to testify as to what records are supposed to be there, how the records are kept, how the testing is performed, any information relating to the actual testing. Who is challenging the admissibility? The prosecutor. Oh, you said upon further questioning. The document itself was entered by the defense counsel. But the judge initially did not allow it until further. Foundation was laid by defense counsel during questioning. But overall, the record shows that the testifying officer did not have any relevant information to the veracity of those records. So did the state have the burden of proof on whether or not the machine met the criteria? Not in the initial part of this proceeding. This proceeding was brought by the petitioner, which was the defendant, and it has – it's a two-part hearing. So during the first part of the hearing, the defendant has the burden of proof, the petitioner, defendant, has the burden of proof to show a preemptation case for lack of probable cause, and then the verdict shifts to the defendant. So this testimony was taking place during the defendant's latest court hearing. Correct. All right. Correct. Did your honors have any further questions? No. Thank you. Thank you. Mr. Hamlin. May it please the Court. Good morning. Counsel. Good morning, Justices. I represent the FLE, Michael Gordon. Sometimes I see better without him. I may need to borrow him during the hearing. I may need to borrow him. They are bifocals. As to this, the defendant's riding on a motorcycle and goes over the strip median. The strip – not strip median. The indentation, I guess you'd call it, in the roadway divides an ingress and egress, I would imagine, and it's more like rumblers on a highway get people to slow down. It's something like that is what I'm guessing. And the person fell off the back. So what's the first thing he says he does is he went right to the person's aid. Officer comes to the scene, which, ironically, the police department is right across the street from the gas station. That's in the fad. It's right across the street from the police department. Her first observation is no sway, no balances, there's no slurred speech, and a little odor. I think her exact quote was, you know, I smell a little something. Would you take a preliminary breath test? Quite cooperative with the officer to its entirety. But with it, I mean, I don't believe – the officer said she'd never seen the manual. Watching a video, is that really the training you want? Are there proper certifications for it? And so do you rely on the value of the PBT? After the PBT, you have the HGM. The HGM, she just had a refresher course, March of 2018. The arrest was June of 2018. Any use of a better term passes the test. No cues. So you have polar opposites, and I can sense through the transcript the judge's frustration when you have one machine says one thing and a test that she was just recently trained on says another. So when you – there is a video to it, and I count this as three parts to the case. I counted a pre-BBT, pre-PBT, a PBT, and post-PBT. On the pre-PBT, again, no balances, no slurred speech, no slang, nothing. The PBT, do you have adequate training, adequate certification, absence of mouth alcohol? How long was the test? Because he said he drank one beer. His testimony said he got there, breath test was in 10 minutes. She said 15. Did she check for mouth alcohol, et cetera? I'm having a hard time understanding it. Slow it up. Not a lot of captions. I slowed down. I apologize for that. So the question is whether or not mouth alcohol and a preliminary breath test and the court's well aware of other testing mechanisms, where you have to wait the 20-minute observation period. Then you have the post-PBT with the HGN, with the Fields-Bride test. First Fields-Bride test, again, the HGN, which he passes, which is, again, polar opposite. But then you have the walk-and-turn test and the one-legged-stand test. The walk-and-turn test and the one-legged-stand test, what he tells her that he has nuts and bolts in his ankles, so he has some difficulty walking. Once he demonstrates the walk-and-turn test, you're supposed to demonstrate in such and such fashion that you would want the person to perform. That's why you're demonstrating it. But in the video, it's kind of like a skip at the last time. And I can see a person wondering, well, that's how you want me to do it, and it becomes confusing to the person who's being instructed on how to do the test. The next test is the one-legged-stand test. The irony of that test is she doesn't demonstrate it. The video is in part... She instructs the defendant to stand on one leg and raise the other foot, leg up about six inches, so she'd do that. And just as because I do a lot of these and I'm in court, it sounds relatively simplistic to do. I'm not going to demonstrate it from the court, but if you're raising... Well, you won't pass it if you do, because the test itself is balanced by a number of variables. Correct. Age, weight, medicines, sorts of things. But when you demonstrate it, when you raise a leg, does the other leg follow? In other words, at your knee, does the other leg drop down, or is it supposed to be out? And that's a big difference in the one-legged-stand test, which should have been demonstrated. I'm not... The video is a part of the record. When you watch the video, there's certain problems, and I put it in my Statement of Facts, of even laboring through the instructions to perform the test, which the court made reference to, saying she had difficulty in even administering the test. So that's where I get to, and you see the one-legged-stand test, and I went through it a couple of times thinking, no one demonstrated it. So do you let your knee hang, or are you supposed to hold it out? Which is the difference in the testing, but she didn't demonstrate it. So, with nuts and bolts in your ankle, and I'm not sure as to what ankle was set, all this has effects on physical coordination. But he was very cooperative, very helpful with it, no indication of impairment, or even under the influence, and all his responses were, yeah, I had a beer, came to the gas station for cigarettes, and she fell off the bed, she was not holding on. And it indicates that when you went to her side, again, indications of somebody doing the right thing, not being impaired. So, prior to the fact, as the court asked the standard of review, it was supposed to give great deference, great deference to this. The PBT, without proper certifications, and regardless if it was done the day before, again, question of training, question of, I believe she said she never even seen the manual for the book, and that would be in the statement of facts, but looking for mouthwash, how much time elapsed from the time of the last drink to the time he performed that test, all plays into a PBT, but without the certification, should it even have been used as evidence of some type of impairment. HGN went through all the way to the Supreme Court to say it can be used as evidence for standard field sobriety testing in case of consumption. It can be used for what, I'm sorry, Mr. I believe it's for evidence of you do the test proper. I'm not going to mistake this. Whatever McNown says here, Justice, I'll leave with the court. But, as to the HGN test itself, it showed nothing. This test performed here showed nothing, but I do not want to mistake the Supreme Court in that case. So with that, I'd ask the court to deny the state's requested relief of overturning the petition to rescind. Any further questions? Thank you, Mr. Hamill. Sorry. Thank you. Ms. Bella, any rebuttal? Thank you. First, just a quick point on the counsel's reference to McNown and the HGN test. What the court did say was that failing the horizontal gaze test can indicate impairment, but failing to register any errors on that test does not indicate lack of impairment. So, counsel mentioned that the officer testified that the place on the road was just a set of rumbled strips. Why did they come to that conclusion? Why did they come to that conclusion about the HGN test?  reviewed reports from ophthalmologists and many different professionals on the effects of alcohol on the eyes and the different variables that play into when the alcohol makes the effect and how much alcohol is necessary. They indicated that when somebody is intoxicated and the nystagmus indicates in their eyes, it's a strong indication and a reliable indication that the person is intoxicated. However, it's not conclusive if a person's eyes do not have nystagmus that they are not impaired. They based their conclusion on those ophthalmologists' reports. Actually, those conclusions come from the reports and the court adopts them and says that we agree with these specific findings. Also, the counsel mentioned that the place in the road where the defendant drove over the strips, the officer testified drove over rode over I have to learn some motorcycle language here. The officer testified that it is a raised area. It's not flat and just grooves in the road. It is actually a raised place in the road. What does that go to? I don't think the record establishes that it's illegal to cross that medium. I think that it establishes that the officer at the scene, while she's trying to determine probable cause to arrest the defendant, a person driving typically will not run over a median under normal circumstances. I have never done that. I hope you see a median in a road you can see it with the grooves. Now, this one happened not to be in the middle of the road. Is that correct? It was in the area between the curb and probably the fog line. I think the way it's described in the record again, I didn't see the DVD, so if there's an image of this in the DVD, I did not see it, but based on the officer's testimony turning into the gas station there's an in and an out it sounds like, and this median is in between those two routes, in and out. Like a divider, I think. Which is totally illegal and permissible to go over. I mean, there's nothing I mean, it was not ticketed for improper. She did not ticket him for driving over, but it is one of the facts and circumstances that she understood at the time of the arrest that she took into account in making her determination, so I think it's one of those facts and circumstances when we're exploring whether there was probable cause, we have to have an understanding of what the officer knew and understood as far as facts and circumstances at the time. He knew and understood that he didn't dump the bike when he went over the median and he parked the bike in order to attend to the person that fell off the back. Yes, she testified that the bike that was on the ground and all scratched up. Right, and she wasn't there she was called to the scene after, so she did, that there was no indication that the motorcycle was laying down it was on its kickstand, I believe. So also with regards to the preliminary breath test and the conversations about the reliability of this test, the officer was with the department for 19 years at the time that this arrest took place. She was not a new officer. She was not recently trained on how to do this. She had recently gone through a refresher but she testified that she had actually learned field sobriety tests as many as 14, 15 years ago in 2004 when she initially joined the Manhattan Police Department. As far as the nuts and bolts in the defendant's ankles, I question whether or not it's reasonable to think that a bolt or nut or bolt in your ankle would cause a stumble or a lack of balance on the one-legged stand test. And that's the part specifically that the judge pointed to as an indicator. He said that it was the sway that he found issue with, not with the positioning of the defendant's foot. So whether the foot was six inches off the ground or a foot, it was not that part of the test that the judge found that the defendant had failed. It was the sway. So with that, Your Honors, we request that this Court reverse the trial court's finding of lack of probable cause. I'd like to make just one point. I know you're handicapped because you shouldn't look at the video or the DVD. I know why. Because we have to. We're preparing the overall argument. That's correct. If that happens again, have Mr. Arado speak first. We'll know what happens. Oh, okay. Well, we did the Administrative Secretary, we did call her to the court and it was just, it was so close to the time, I think that they, she said that the DVD was already out to the justices and they didn't have the actual copy, or DVD to make a copy with, so. We're always happy to make copies. I guess we just didn't get that message. I'm glad that you made the effort. Thank you. Thank you. We thank both of you for your arguments. We will take the matter under advisement and a written order will issue. The Court will stand in brief recess for a panel of witnesses.